Beth Creighton, OSB #972440
E-mail: beth@civilrightspdx.com
Laura Koistinen, OSB #175123
E-mail: laura@civilrightspdx.com
CREIGHTON & ROSE, P.C.
300 Powers Building
65 S.W. Yamhill Street
Portland, Oregon 97204
Phone: (503) 221-1792
Fax: (503) 223-1516

Of Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **HALEY ROGERS,** | Case No. 3:19-cv-00652 |
| Plaintiff, | **COMPLAINT** |
| vs. | (Sex Discrimination/Retaliation - ORS 659A.030 and 42 U.S.C. 2000e-2 et seq.; Unequal Pay - ORS 652.220 and 29 U.S.C. § 206(d); Whistleblowing - ORS 659A.199; OFLA/FMLA Discrimination - ORS 659A.162 et.seq. and 29 USC § 2615(a)(1)) |
| **WILLAMETTE VALLEY MEDICAL CENTER LLC, a Foreign Limited Liability Corporation,** | |
| Defendant. | |
| | ***DEMAND FOR JURY TRIAL*** |

**I.**

**INTRODUCTION**

1.

Pursuant to 42. U.SC. § 2000e-2, the Equal Pay Act, 29 U.S.C. § 206(d), the Family and

Medical Leave Act (FMLA), 29 U.S.C. § 2615(a)(1), ORS 659A.030, ORS 652.220, and ORS

PAGE 1 – COMPLAINT

CREIGHTON & ROSE, PC  ATTORNEYS AT LAW
65 SW Yamhill St. #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

ORS 659A.199 and 659A.162, Plaintiff alleges the deprivation of her rights as protected by federal anti-discrimination statutes and state anti-discrimination and anti-retaliation statutes. She seeks damages and equitable remedies, including declaratory judgment and attorney fees, and litigation expenses/costs, including expert witness fees and expenses in an amount to be determined at trial.

II.

JURISDICTION and VENUE

2.

This court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343 because plaintiff asserts a cause of action arising under the Constitution, laws, or treaties of the United States. This court has supplemental jurisdiction with respect to plaintiff's state law claims under 28 U.S.C. § 1367. This court also has jurisdiction under 28 U.S.C. § 1332 because there is diversity of citizenship and the amount in controversy is greater than $75,000.

3.

Defendant's principal place of business is located in the city of Brentwood, county of Williamson Tennessee. Defendant owns and operates a business facility in McMinnville, Oregon located located in Yamhill County, Oregon, making venue proper in the District of Oregon, Portland Division.

III.

PARTIES

4.

Plaintiff Haley Rogers (hereafter "plaintiff," "Rogers") is a former employee of defendant

PAGE 2 – COMPLAINT

CREIGHTON & ROSE, PC   ATTORNEYS AT LAW
65 SW Yamhill St. #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

Willamette Valley Medical Center LLC. At all times relevant to the events recited herein, Rogers was employed by Willamette Valley Medical Center LLC in McMinnville, Oregon.

5.

Willamette Valley Medical Center LLC (hereafter "defendant," "Willamette Valley") was and is a Limited Liability Corporation, organized under the laws of the state of Delaware, and with its principal place of business in the state of Tennessee. At all times relevant herein, Willamette Valley owned and operated a facility in McMinnville, Oregon, where Rogers was formerly employed.

**IV.**

**FACTS**

6.

In August of 2013, Willamette Valley hired Rogers as a Medical Staff Coordinator position.

7.

In November of 2014, Willamette Valley promoted Rogers to the Marketing and Public Relations Manager ("Manager") position. In 2016, Willamette Valley additionally asked Rogers to assist with the credentialing process for the doctors who practiced at Willamette Valley.

8.

After Rogers became the Manager, she later learned that the previous Manager, who was a man, had been working 20 hours a week and Willamette Valley was compensating him $72,000 per year plus a manager's bonus and benefits. Rogers was working full time and had more duties than the previous manager, yet the previous manager's compensation was still more than Rogers'

PAGE 3 – COMPLAINT

CREIGHTON & ROSE, PC
ATTORNEYS AT LAW
65 SW Yamhill St. #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

compensation.

9.

After Rogers noticed this discrepancy, at least twice she asked for a raise commensurate with the past manager's compensation. She was told that "considering she was a single woman," she was "making a nice salary."

10.

From the time that Rogers started her credentialling duties at Willamette Valley, she pointed out and objected to the dishonest credentials process they were using to have doctors work at the hospitals. Willamette Valley was falsifying meeting minutes to make it seem like they were following the proper methods of having credentials for all of their doctors, when in reality they were not consistently running background checks or properly checking for medical licenses before giving privileges and temporary privileges to the doctors. Willamette Valley was also authorizing doctors to perform procedures which they were not credentialed to do at their facility.

11.

The Medical Staff Coordinator was constantly being asked to make omissions in the chart and alter dates of approvals.

12.

Because of the lack of proper planning by the Physician Recruiter/Director, there were times where there was a shortage of doctors to cover call/weekends appropriately, which didn't give the Medical Staff Coordinator time to properly credential the physician as stipulated by the hospital's very own medical staff bylaws. General surgeons were given privileges to conduct

PAGE 4 – COMPLAINT

CREIGHTON & ROSE, PC | ATTORNEYS AT LAW
65 SW Yamhill St. #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

surgery at Willamette Valley and were not even approved by the Chief of Staff or Chief Executive Officer.

13.

In the Summer of 2017, Rogers' supervisor asked her to do a full investigation into the Medical Staff office as she was the highest ranking manager with the most experience in that job. Rogers brought to him numerous infractions that if discovered by the Joint Commission, Willamette Valley's accrediting body, would result in fines and punishment up to the point of rescinding the hospital's Joint Commission Accreditation.

14.

In February 2018, Willamette Valley Management asked that Rogers step in for the Joint Replacement Institute's advanced certification application and handle the subsequent audit of medical staff. While going through all the credentials of the physicians for this audit Rogers discovered that Dr. Michael Vessely's (herein, "Dr. Vessely") signed privilege form was hugely inaccurate and that due diligence had not been done when proving his credentials were accurate by Joint Commission Standards. When Rogers brought this to the attention of management, they told her to "figure it out" and that she was to only present evidence for specific questions and restrict the viewing of the charts. In past audits, all of the charts were printed out and given to the auditor. This time Administration made Rogers take the auditor through their digital system while they watched because they wanted to make sure she hid all of the problematic information from the auditor.

15.

During Rogers' investigation in the Summer of 2017, she also found changes to meeting

PAGE 5 – COMPLAINT

CREIGHTON & ROSE, PC    ATTORNEYS AT LAW
65 SW Yamhill St. #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

minutes after the minutes were approved by the Committee. Rogers documented when information pertaining to new doctors not being properly proctored, having updated and valid licences and insurance, was hidden. This happened often and was included in her report. For example, if the Credential Committee, Medical Executive Committee, and the Board of Trustees all approved a doctor for one year and then would review the doctor's performance through proctoring reports submitted on the one-year anniversary, which is referred to as "reappointment," they were not done or ever checked. They would write things in the minutes such as "approved pending verification of medical license" but they were never checked on, and in the meetings to follow were not reviewed to make sure the doctor had been properly verified at all. Meanwhile, the doctor had acting privileges providing care to patients.

16.

After turning in this information that Rogers found during her investigations, defendant told Rogers that she was to stay out of the Medical Staff Office and that she was not to "interfere" in credentials anymore.

17.

After Rogers' audit was complete the Chief Quality Officer (herein "CQO") was terminated. The now-former CQO and her friends remaining at Willamette Valley began to call Rogers "the mean girl" for getting the CQO terminated.

18.

During the course of her employment, Rogers heard about various sexual inappropriate behavior that created a permissive environment that allowed sexual harassment to occur and flourish. She heard that a doctor in the hospital, Dr. Higa, had tried to push his way into a hotel

CREIGHTON & ROSE, PC
ATTORNEYS AT LAW
65 SW Yamhill St. #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

room and kiss his female manager at a work-related conference.  When the Physician Clinic Director found out about this incident, she announced the female manager "just needs to get over it."

19.

Also during her employment, Rogers learned that Dr. Rains was having an affair with his medical assistant, who was his direct report, a situation that was founded on a imbalance of power that was frought with the potential for coercion and abuse.

20.

At Defendant's Operating Room Department's Christmas party in 2015, Dr. Vessely became intoxicated and made verbal advances toward a former manager of Defendant's. The manager rejected his advances.  The manager was told later that there was a rumor that she had gone home with Dr. Vessely that night.  Dr. Vessely relayed a message to the manager through Natalie Reed ("Reed") that the manager was to no longer contact Dr. Vessely professionally.

21.

A nurse that worked with Dr. Vessely resigned.  During her exit interview, she revealed that when she asked Dr. Vessely for vacation time off to go to the Dominican Republic with a non-profit group to assist with surgeries, he told her she could go, "only if she wears a bikini in the operating room."  Defendant later encouraged her to retract her statement.

22.

On or about August 6, 2016, Rogers attended a work-related event along with three other employees of Willamette Valley, including Dr. Vessely.  Her female coworker, the Physician Clinic Director, asked Rogers to go with her after the event to continue the night because she did

PAGE 7 – COMPLAINT

CREIGHTON & ROSE, PC
ATTORNEYS AT LAW
65 SW Yamhill St. #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

not feel comfortable going to a function with alcohol with Dr. Vessely and another male coworker, because she had heard that Dr. Vessely was inappropriate in the past when he had been drinking and she did not want to be seen out in public with two men alone.

23.

After the event, in the bar as Rogers was standing next to the table, Dr. Vessely grabbed her buttocks and hips and pulled her towards him so that his arm was placed across Rogers' buttocks.

24.

Rogers was shocked and immediately pushed Dr. Vessely away from her.  She made it very clear that his grab was unwelcome. She left that night with the Physician Clinic Director, who had seen Roger s' reaction to Dr. Vessely.  Rogers and the Physician Clinic Director had a discussion about the incident on the ride home.

25.

The following day, she had a discussion with the Physician Clinic Director and two coworkers about Dr. Vessely's inappropriate behavior.  Because of the hostility she had seen exhibited towards other women when they complained about sexual harassment at Willamette Valley, Rogers chose not to go to Human Resources with her complaint.  Additionally, since the Physician Clinic Director witnessed the event and spoke to her after the event, Rogers believed that Willamette Valley was on notice of Vessely's inappropriate grab of her buttocks.

26.

Prior to the incident, Rogers and Dr. Vessely had a cordial relationship.  He occasionally joined Rogers and other coworkers for lunch in the patio area.  He inquired how she was.  Rogers

PAGE 8 – COMPLAINT

CREIGHTON & ROSE, PC | ATTORNEYS AT LAW
65 SW Yamhill St. #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

had no issues working with Dr. Vessely while planning public relations events or promotions.

27.

Shortly after Rogers opposed Dr. Vessely's sexually harassing behavior and spoke to the Physician Clinic Director about Vessely's groping her buttocks, Dr. Vessely's behavior changed towards Rogers. Dr. Vessely acted awkwardly around Rogers and wouldn't make eye contact with her or speak with her. He began engaging in behavior that made it extremely difficult to do her job. He was belligerent, obstinate, rude and unduly difficult going forward in their professional capacity.

28.

Dr. Vessely's negative behavior toward Rogers was more intense and frequent than his negative behavior was towards other employees. He was now requiring rewrites or changes to promotions that he had approved without fuss in the past. He refused to wear the designated dress code for promotional photo shoots. He required all the photographs from the shoot be sent to him for his selection and refused to allow Rogers to eliminate the photos that were out of focus or where the sizing would not accommodate the project's objective.

29.

When Rogers forwarded on Dr. Vessely's demeaning, demanding, and highly critical emails to Rogers' supervisor, his response was simply "never dull or easy," "that's Vessely being Vessely."

30.

Not only had Dr. Vessely become rude, unhelpful and disrespectful since the incident mentioned above, but his staff had also striven to make Rogers' job difficult. The Joint

PAGE 9 – COMPLAINT

CREIGHTON & ROSE, PC  ATTORNEYS AT LAW
65 SW Yamhill St. #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

Replacement Institute of Oregon's ("JRIO") former manager, Reed, had taken her cue from Dr. Vessely and written rude emails to Rogers and had purposefully copied many people to the emails to ensure all would see Rogers as incompetent and unhelpful. One example is an email she sent on May 1, 2018, including two senior members of staff to point out that Rogers had put the wrong contact information in a Facebook post and that she needed to review all futures Facebook posts from then on.

31.

Another factor in the way Rogers was treated at Willamette Valley was that she kept pointing out and objecting to the dishonest credentials process they were using to have doctors work at the hospitals. The CQO and CEO were falsifying meeting minutes to make it seem like they were following the proper methods of having credentials for all of their doctors, when in reality they were not running background checks or properly checking for medical licenses before giving privileges and temporary privileges to the doctors. This practice has been going on since at least 2015.

32.

On March 16, 2018, a coworker whom Rogers viewed as a friend called her. Rogers told her she was having a rough week so she asked Rogers to come down and "chat" with her. When Rogers arrived at her office, she was there with another coworker who worked in Human Resources that Rogers also considered a friend. Rogers told them about her frustrations and difficulties with Dr. Vessely and how Rogers believed this change in their working relationship was caused by the incident in August of 2016 where she had pushed Dr. Vessely away when he grabbed her buttocks.

PAGE 10 – COMPLAINT

CREIGHTON & ROSE, PC | ATTORNEYS AT LAW
65 SW Yamhill St. #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

33.

Based on this conversation, Human Resources contacted her and insisted on opening an investigation into the sexual harassment incident with Dr. Vessely and required Rogers to make a statement about the harassment. Rogers told them repeatedly that she was more concerned with the ongoing retaliation she had experienced after that incident. HR told her "You need to know that when you use 'big girl words' like 'sexual harassment,' we have to investigate." HR told Rogers that they were going to investigate the sexual harassment allegations first and then the retaliation in a subsequent investigation.

34.

From the beginning, Rogers made it clear that her grievance with Dr. Vessely was that he was a habitual bully, he treated people in a demeaning and derogatory manner, and that he was highly critical and rude. He would find ways to make daily tasks as hard as possible for her just because he knew he could, since he was a substantial money-maker for the hospital and enjoyed the protection of the hospital. The incident where he grabbed Rogers' buttocks was the catalyst for him being hostile, demeaning and rude to her.

35.

Ever since the beginning of the sexual harassment investigation, Reed's aggression and disrespect towards Rogers had grown. She began to copy members of the Executive Leadership team on every email to Rogers concerning things Rogers was supposed to have done and had not done yet or other tasks she wanted her to complete.

36.

Another example of Reed's difficult demands was when Reed requested multiple proofs

CREIGHTON & ROSE, PC
ATTORNEYS AT LAW
65 SW Yamhill St. #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

of the advertisements for the elevator doors and other advertisements. More specifically, 10 versions of the billboard, 9 flier examples and 3 postcards. If Rogers had said that was excessive and a waste of time then Reed would have complained to Rogers' supervisor and other managers that Rogers allegedly wouldn't work with her, so Rogers did the extra and unnecessary work and finished all of the proofs and sent them to Reed, which she approved all, but one. The approved prints were sent to print. She sent Rogers an email on April 17, 2018, requesting a change to the verb used in the advertisement, which goes above and beyond her job duties and intrudes into Rogers' area of expertise, and some ads had already been printed. Rogers took the time anyways to explain to her Rogers' decision to keep the wording as is because that was how it already had been used, and consistency within advertisement is key. Reed refused to listen to Rogers and continued to demand that the change be made until Rogers' supervisor finally stepped in, to say it was staying the same. After Rogers went on FMLA, Reed made the changes herself and reprinted the ads, thereby cutting into Rogers' department's budget and risking to affect Rogers' bonus and other services offered by her department.

37.

On April 24, 2018, Rogers sent out an email to all of the managers and supervisors regarding a video they were going to make to enter into a competition. Included in the email was all the information about the video and the schedule of when they would be filming in each department to get the required footage. Within minutes of that email being sent, Reed responded by telling Rogers that she had forgotten JRIO and sent copies to all the managers. Rogers included JRIO in the Med/Surg section since they are a surgical unit and so she had not listed JRIO separately. Instead of asking Rogers, Reed just accused her of forgetting them and

PAGE 12 – COMPLAINT

CREIGHTON & ROSE, PC   ATTORNEYS AT LAW
65 SW Yamhill St. #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

included an executive and all other managers on her email to publically point out a perceived mistake that was actually not a mistake.

38.

Before Defendant had interviewed Dr. Vessely and the Physician Clinic Director for the investigation, Rogers witnessed Dr. Vessely entering her supervisor's office to discuss the investigation with him and tell his side of the story. Rogers' supervisor never reached out to Rogers to hear her side. Rogers believes that Dr. Vessely and other witnesses coordinated their stories before they participated in the investigation.

39.

Willamette Valley proceeded with the investigation by contacting two women whom Rogers had told about the grabbing incident. Both recalled the conversation.

40.

When the investigation began, the Physician Clinic Director became cold and distant towards Rogers. She claims not to remember the incident where Dr. Vessely grabbed Rogers' buttocks. In group emails, she would speak out against Rogers.

41.

On April 30, 2018, Rogers was required to go to a closed meeting with the HR Director and her supervisor. The HR Director started the meeting with "this is going to be a very difficult conversation because hearing about [her] professional inabilities is never easy." They gave Rogers a letter that did not address the sexual harassment about which Rogers had made her statement, and that they did not find "substantial evidence to support an allegation of harassment and bullying conduct by Dr. Vessely." It was then that Rogers learned that there would be no

PAGE 13 – COMPLAINT

Creighton & Rose, PC
Attorneys at Law
65 SW Yamhill St. #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

second investigation into the retaliation and Rogers was not afforded the opportunity to make a full statement about the retaliation or bullying.

42.

The letter presented to Rogers by HR in conclusion of the sexual harassment investigation also accused her of having "communication issues" and that Rogers had a "need to improve [her] communication skills and interaction with co-workers in a professional manner." Rogers was asked to sign a letter agreeing to get counseling to help improve her communication skills and interactions with co-workers, and told that she would be placed in an office with Dr. Vessely where they would "hash it out." When Rogers said she didn't know about agreeing to counseling and that she especially did not want to be in a room with Dr. Vessely, the response was, "what do you mean, don't know? It's not an option."

43.

Due to these issues with Dr. Vessely and the lack of support by Willamette Valley to the point of blaming her for Dr. Vessely's punitive behavior, Rogers developed anxiety and stress-related health issues. Rogers' doctor recommended that Rogers take at least 4 weeks of Family Medical Leave Act (FMLA) starting on May 3, 2018.

44.

Even though Rogers was granted FMLA after showing proper doctor's documentation, Willamette Valley continually contacted her while on leave, asking her to do parts of her job from her home to help them.

/////

/////

PAGE 14 – COMPLAINT

CREIGHTON & ROSE, PC | ATTORNEYS AT LAW
65 SW Yamhill St. #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

V.

# CLAIMS

**FIRST CLAIM FOR RELIEF**
**Sex Discrimination**
**(42 USC 2000e-2 et seq.; ORS 659A.030)**

45.

Plaintiff incorporates paragraphs 1 through 44 as if fully set forth herein.

46.

As herein described, Defendant discriminated against plaintiff in the course of her employment on the basis of her sex, in being paid less than the former, male employee that held her position, for working twice as much time and having more duties, in violation of 42 USC 2000e-2 et seq. and ORS 659A.030.

47.

As a direct and proximate result of Defendant's unlawful acts, Plaintiff has incurred accruing economic losses, including but not limited to lost income and lost benefits and seniority. Plaintiff is entitled to an award of lost wages and benefits in an amount to be determined by a jury at trial.

48.

As a direct and proximate result of Defendant's unlawful acts, Plaintiff has suffered loss of future income and impairment of earning capacity in an amount to be determined by the jury at trial.

49.

As a direct and proximate result of Defendant's unlawful acts, Plaintiff has suffered non-

CREIGHTON & ROSE, PC
ATTORNEYS AT LAW
65 SW Yamhill St. #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

economic damages, including but not limited to emotional distress, depression, anxiety, and loss of enjoyment of life, and is entitled to an award of compensatory damages in an amount to be determined by a jury at trial.

50.

Plaintiff is entitled to reimbursement of her reasonable attorneys' fees and costs pursuant to ORS 659A.885, ORS 20.107, and/or 42 USC § 1988.

## SECOND CLAIM FOR RELIEF
### Equal Pay Violation
### (29 USC § 206(d); ORS 652.220)

51.

Plaintiff incorporates paragraphs 1 through 44 as if fully set forth herein.

52.

Defendant violated 29 U.S.C. § 206(d) and ORS 652.220 by paying Rogers at an unequal rate since she began employment with it in August of 2013.

53.

During all times material in this suit, Rogers was paid a lower wage than the her male counterpart who previously held her position.

54.

During all times material to this suit, Rogers did work that was substantially equal to the work done by the male counterpart who previously held her position.

55.

Defendant's actions caused Rogers to incur economic damages for unequal pay and benefits in an amount to be determined at trial, and other compensation lost by reason of

PAGE 16 – COMPLAINT

CREIGHTON & ROSE, PC | ATTORNEYS AT LAW
65 SW Yamhill St. #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

defendant's violation of Rogers' rights.

56.

In addition, Rogers is entitled to all available damages, including but not limited to back pay, liquidated damages, reasonable attorneys' fees and costs.

**THIRD CLAIM FOR RELIEF**
**Retaliation for Whistleblowing**
**(ORS 659A.199)**

57.

Plaintiff incorporates paragraphs 1 through 44 as if fully set forth herein.

58.

As herein described, defendant retaliated against Rogers because she opposed unlawful employment practices and disclosed information that she reasonably believed was evidence of a violation of ORS 659A.199.

59.

As a direct and proximate result of defendant's unlawful acts, plaintiff lost income and benefits and also incurred out-of-pocket medical bills as a result of defendant's unlawful acts.

60.

As a result of the events previously described, plaintiff suffered non-economic damages, including but not limited to emotional distress, depression, anxiety, and loss of enjoyment of life, and is entitled to an award of compensatory damages in an amount to be determined by a jury at trial.

61.

Plaintiff is entitled to future lost wages, her reasonable attorneys' fees and costs pursuant

PAGE 17 – COMPLAINT

CREIGHTON & ROSE, PC
ATTORNEYS AT LAW
65 SW Yamhill St. #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

to ORS 659A.885 and ORS 20.107, and all other available remedies at law.

62.

Plaintiff is entitled to a declaration that defendant violated her rights under ORS 659A and an order requiring defendant to take appropriate steps to make her whole.

63.

Plaintiff is entitled to all equitable remedies available in order to make her whole.

**FOURTH CLAIM FOR RELIEF**
**OFLA/FMLA Violations**
**(ORS 659A.162 et seq; 29 USC § 2615(a)(1))**

64.

Plaintiff incorporates paragraphs 1 through 44 as if fully set forth herein.

65.

As herein described, defendant discriminated against plaintiff in the course of her employment on the basis of her requesting and using OFLA/FMLA, including but not limited to subjecting her to a hostile work environment, in violation of ORS 659A.162.

66.

As a direct and proximate result of defendant's unlawful acts, plaintiff lost income and benefits and also incurred out-of-pocket medical bills as a result of defendant's unlawful acts.

67.

As a result of the events previously described, plaintiff suffered non-economic damages, including but not limited to emotional distress, depression, anxiety, and loss of enjoyment of life, and is entitled to an award of compensatory damages in an amount to be determined by a jury at trial.

PAGE 18 – COMPLAINT

CREIGHTON & ROSE, PC | ATTORNEYS AT LAW
65 SW Yamhill St. #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

68.

Plaintiff is entitled to future lost wages, her reasonable attorneys' fees and costs pursuant to ORS 659A.885, ORS 20.107, and/or 29 U.S.C. § 2617(a)(3) and all other available remedies at law.

69.

Plaintiff is entitled to a declaration that defendant violated her rights under ORS 659A and an order requiring defendant to take appropriate steps to make her whole.

70.

Plaintiff is entitled to all equitable remedies available in order to make her whole.

## VI.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Rogers prays for her costs and disbursements incurred herein and for the following in accordance with the proof at trial:

a. Economic damages

b. Non-economic damages

c. Future lost wages;

d. Reasonable attorneys' fees and costs;

e. A declaration that defendant violated plaintiff's rights and an order requiring defendant to take appropriate steps to make her whole;

f. Prejudgment and post judgment interest as appropriate and allowed by law;

g. On all claims, as applicable, amounts necessary to offset the income tax consequences of receiving a lump sum payment, rather than receiving a payment of wages of the

PAGE 19 – COMPLAINT

CREIGHTON & ROSE, PC | ATTORNEYS AT LAW
65 SW Yamhill St. #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

applicable time frame;

  h. Injunctive relief ordering Defendant to cease and desist its illegal practices under each claim above cited, and order Defendant to carry out and institute policies, practices, and programs designed to ensure that such violations are not repeated in the future;

  i. Punitive damages;

  j. Any and all other relief as this court may deem proper.

DATED this 29th day of April, 2019  CREIGHTON & ROSE, PC

               *s/ Beth Creighton*
               BETH CREIGHTON, OSB# 972440
               beth@civilrightspdx.com
               LAURA KOISTINEN, OSB #175123
               laura@civilrightspdx.com
               Attorneys for Plaintiff Haley Rogers

**JURY TRIAL DEMANDED**

PAGE 20 – COMPLAINT

CREIGHTON & ROSE, PC | ATTORNEYS AT LAW
65 SW Yamhill St. #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com